T.C. Summary Opinion 2007-151

UNITED STATES TAX COURT

DARRYL F. ROYSTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21199-04S.                    Filed August 30, 2007.

Darryl F. Royster, pro se.

<u>Kathleen Schlenzig</u> and Angela Friedman (specially
recognized), for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code in effect for

the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $5,995, $5,060, and $6,089 in petitioner's Federal income taxes, and accuracy-related penalties under section 6662(a) of $1,199, $1,012, and $1,217.80 for taxable years 2000, 2001, and 2002, respectively. The issues for decision are: (1) Whether, for the taxable years in issue, an activity conducted by petitioner known as Royster Basketball School constituted an activity engaged in for profit within the meaning of section 183(a); (2) whether petitioner is entitled to deduct expenses relating to Royster Basketball School during the years in issue under either the foregoing section or, in the alternative, section 183(b)(1) and (2); and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of the rules or regulations for each of the years at issue.[1]

---

[1] Two adjustments in the notice of deficiency were not addressed at trial and are, therefore, deemed conceded. One of these adjustments relates to whether petitioner is liable for self-employment tax stemming from his work as a basketball referee during the years at issue, and as listed on the Schedules C, Profit or Loss From Business, he attached to his returns for 2000, 2001, and 2002. Respondent determined that petitioner is liable for self-employment tax on that income with a corresponding deduction for one-half of that tax. The second adjustment that is also deemed conceded relates to unreported income in the amount of $875 received in 2000.

## Background

Some of the facts have been stipulated by the parties and so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Chicago, Illinois.

During the years in issue, petitioner was employed full time by the Internal Revenue Service (IRS) as a computer equipment analyst/information technology specialist.

Petitioner has played basketball since adolescence, and played on the basketball team at McMurray College in Jacksonville, Illinois. After college, petitioner shifted his interest from playing basketball to being a basketball referee. Petitioner has been a high school basketball referee for the past 33 years and has attended referee training programs sponsored by the National Basketball Association (NBA), as well as the National Collegiate Athletic Association (NCAA).

During the taxable years in issue, petitioner refereed high school basketball games. Petitioner filed Schedules C, reporting income and business expenses pertaining to this activity for each of the taxable years at issue.

In 1998, petitioner parlayed his involvement with high school basketball by establishing a traveling men's basketball team and skills school known as Royster Basketball School (RBS). Petitioner's dual purpose in establishing this team was to

provide talented, high school-aged basketball players in the Chicago area with an opportunity to participate in a series of tournaments around the country that provide players with exposure to collegiate and professional talent scouts, and through the success of his players, to establish and enhance his personal reputation as a basketball coach and talent scout to the point where he would receive a job offer from one of the major athletic apparel and shoe companies.

Petitioner wished to model RBS after a number of similar basketball schools currently operating around the country. These programs are mostly run by former professional basketball players as nonprofit entities. Due to their own celebrity, as well as that of their players, some school directors have received lucrative job offers from major athletic shoe and clothing companies to serve as "advisory talent consultants". In this role, the team directors are responsible for spotting talented players early in their careers so that the athletic companies would be able to enter into lucrative endorsement deals with the players after their school careers are over. It is not unusual for these consultants to garner salaries in the six-figure range.

Petitioner recruited players for his team through word-of-mouth, his own observations as a referee for high school basketball games, and advertisements for tryouts placed in local newspapers. Petitioner would hold tryouts for RBS each March in

conjunction with the end of the high school basketball season. Petitioner would have many more players turn out for the tryouts than he had spots for on the RBS team. Once selected for RBS, players were required to pay $300. This fee was for gym rentals, coaching, and costs associated with the various basketball tournaments that RBS participated in.

RBS held weekly practices at rented gyms and recreational centers and schools near petitioner's home. During the summer and fall months, RBS would participate in a series of basketball clinics and tournaments, including a series of tournaments sponsored by the Amateur Athletic Union (AAU). These tournaments were held in Illinois, Minnesota, Ohio, Kentucky, Indiana, Louisiana, and Florida.

Petitioner maintained a checking account for RBS at Mid-America Bank in Western Springs, Illinois. At a meeting with an IRS employee held on November 25, 2005, when specifically asked whether he had a business plan, petitioner replied that he did not have a business plan for RBS. On May 25, 2006, however, during a conference with respondent in preparation for trial, petitioner presented respondent with a three-page document entitled, "Business Plan for RBS".

At some time prior to 2000, the first taxable year in issue, petitioner started a business known as Dynamic Motivational Resources (DMR). DMR was a motivational speaking enterprise

directed towards improving the lives of young basketball players in urban Chicago.  Aside from a Schedule C for DMR, which was attached as part of the stipulated exhibits, the record is devoid of any other mention of this activity.  Petitioner did not file a Schedule C with respect to DMR in either 2001 or 2002.

For taxable years 2000, 2001, and 2002, petitioner filed Schedules C for RBS as follows:

|                        | 2000      | 2001      | 2002      |
|------------------------|-----------|-----------|-----------|
| Income                 | $3,000    | $3,850    | $2,450    |
| Business Expenses      |           |           |           |
| Advertising            | 44        | 400       | –         |
| Bad debts              | –         | 275       | –         |
| Insurance              | 350       | –         | –         |
| Vehicle rental         | 840       | –         | 1,725     |
| Property rental        | 1,365     | –         | –         |
| Car and truck          | –         | 1,466     | 3,078     |
| Office expenses        | –         | –         | 500       |
| Utilities              | 1,154     | 1,556     | 3,916     |
| Taxes and licenses     | –         | –         | 200       |
| Travel, meals          |           |           |           |
| and entertainment      | –         | 4,390     | –         |
| Supplies               | –         | 200       | 2,425     |
| Other                  | 19,536    | 13,605    | 13,150    |
| Total expenses         | 23,289    | 21,892    | 24,994    |
| Net profit or (loss)   | (20,289)  | (18,042)  | (22,544)  |

In the notice of deficiency mailed to petitioner, respondent disallowed all of the business expenses claimed by petitioner on the Schedules C for RBS in 2000, 2001, and 2002, because petitioner had neither established that any of the amounts constituted an ordinary and necessary business expense nor provided any documentation to substantiate the claimed expenses. Respondent also recharacterized the amounts of income as listed

on petitioner's Schedules C for RBS for each of the taxable years in issue on the grounds that the income was received from petitioner's employer (IRS) as reimbursement for employee business expenses.

As part of the examination, the IRS agent sent petitioner letters on October 3, 2003, November 21, 2003, January 9, 2004, January 30, 2004, and February 19, 2004, requesting documentary evidence supporting his claimed business expenses. Further, during meetings with petitioner held on November 21, 2005, May 8, 2006, and May 25, 2006, respondent requested supporting documentation for the business expenses reported on the Schedules C. Finally, on May 31, 2006, petitioner provided respondent with copies of canceled checks, invoices, receipts, and newspaper articles. Copies of these submissions are included in the stipulated exhibits received at trial.

Petitioner's home was burglarized on or about September 11, 2005. Petitioner informed respondent thereafter that files, records, and information pertaining to RBS stored on petitioner's computer were taken in the robbery. The police investigation report, included as part of the stipulated exhibits, lists as the only property taken in the robbery a computer and all of the RBS-related receipts. The report also concludes that there was no forced entry into petitioner's home.

Petitioner seeks a redetermination of deficiencies in this case on the grounds that he was engaged in a trade or business with respect to RBS within the meaning of section 183 during the taxable years in issue, and that he possesses the necessary documentation to substantiate the disallowed business expenses. Petitioner does not raise as issues either the self-employment tax, the unreported income that respondent included in the determination for taxable year 2000, or the recharacterized income as reported on his Schedules C for RBS.[2]

## Discussion

Generally, the taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace with the taxpayer bearing the burden of proving entitlement to the deductions claimed. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Under section 7491(a), this burden of proof may shift to the Commissioner in certain situations. Petitioner contends that section 7491(a) requires respondent to bear the burden of proof. We need not decide this issue, however, because our analysis in

---

[2] There is nothing in the record to support respondent's determination recharacterizing the gross income reported on Schedules C for RBS during the years at issue as reimbursement for expenses from petitioner's employer, IRS. The Court is at a loss as to why this adjustment was made.

this case is based on the record before the Court and not on which party bears the burden of proof.

Petitioner's Basketball Team Activity (RBS)

The first issue for decision is whether RBS was an activity petitioner engaged in for profit within the meaning of section 183 during the years in issue.

Section 183(a) provides that if an individual engages in an activity but does not engage in that activity for profit, "no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." In the case of an activity not engaged in for profit, section 183(b)(1) allows deductions which are otherwise allowable without regard to whether the activity is engaged in for profit. Section 183(b)(2) allows deductions that would be allowable if the activity were engaged in for profit, but only to the extent of gross income received from the activity. Section 183 defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Section 162 allows a taxpayer to deduct ordinary and necessary expenses of carrying on the taxpayer's trade or business. Paragraphs (1) and (2) of section 212 allow the taxpayer to deduct expenses incurred in connection with an activity engaged in for the production or collection of income,

or for the management, conservation, or maintenance of property held for the production of income.

Factors to be considered in determining whether an activity is engaged in for profit include: (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. No single factor or group of factors is determinative. Golanty v. Commissioner, supra at 426. A final determination is made only after a consideration of all of the relevant facts and circumstances.

With respect to the taxpayer's expectation of making a profit, this expectation need not be reasonable. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). However, greater weight is given to objective facts rather than to a taxpayer's self-serving

statement of intent.  Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

Respondent determined that petitioner did not engage in his basketball team activity (RBS) with an "actual and honest profit objective", and therefore disallowed the Schedule C business expenses for the years at issue.  Dreicer v. Commissioner, supra at 645.  Petitioner contends that he engaged in RBS with a profit objective and therefore, is entitled to deduct from his gross income the reported business expenses resulting in losses relating to that activity.  We now address the nine factors provided in section 1.183-2(b), Income Tax Regs., in making our determination.

Manner in Which Petitioner Carried On RBS

To determine whether a taxpayer carried on an activity in a business like manner, the following may be considered:  (1) Whether the taxpayer maintained complete and accurate books and records; (2) whether taxpayer's conduct is substantially similar to that of other profitable activities; and (3) whether taxpayer made changes to improve the activity's profitability.  Sec. 1.183-2(b)1), Income Tax Regs.

Petitioner introduced little evidence showing that he kept track of his expenses during the year.  The record in this case is devoid of any evidence that petitioner used monthly or yearly business statements to gauge his profitability or to make

business decisions.  Petitioner suggests that he would have been able to produce these records if not for the burglary of his apartment that occurred in September of 2005.  We note, however, that the burglary occurred 23 months after respondent's first of five total requests to petitioner to produce these records, and that petitioner's only attempts to recreate any records were to obtain photocopies from his bank of checks written on the RBS account during the years in issue, a partial list of players from 2001, two hotel receipts from 2000, and a copy of a gym rental for 2000.  While the checks provided are all written on the RBS account, it is unclear whether or not some of the checks were drafted to pay for RBS-related expenses.

Petitioner also presented a copy of an American Express statement from 2000.  The American Express statement shows that the account was held by both petitioner and his ex-wife.  The statement was not accompanied by any detailed description of the charges made on the account, or the pertinence of the charges made to RBS.

The record is devoid of any evidence that petitioner maintained records for RBS or that he used business statements to gauge his profitability or to make business decisions. Moreover, we are not convinced that petitioner would have been able to produce such records, even had the burglary not occurred to his apartment.

When the taxpayer conducts an activity in a manner substantially similar to that of other activities of the same manner which are profitable, a profit motive may be indicated. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs. Petitioner presented no evidence about how other basketball teams/skills schools are operated. He did credibly testify, however, that directors of teams like RBS had won lucrative job offers from major athletic shoe and clothing companies.

Generally, when considering whether the taxpayer's conduct is similar to that of other profitable activities of the same nature, the relevant factors for consideration include advertising, maintaining a separate bank account, developing a written business plan, and having a plausible strategy for earning a profit. See Morley v. Commissioner, T.C. Memo. 1998-312; Butler v. Commissioner, T.C. Memo. 1997-408.

Petitioner spent a total of $444 on advertising in the years in issue, plus word-of-mouth advertising at local basketball games. In addition, petitioner attached several newspaper articles as exhibits which mention RBS. The Court has recognized that both word-of-mouth and newspapers can constitute advertising. Petitioner testified that word-of-mouth and news stories were, in fact, the best ways that he could promote his school.

Petitioner maintained a separate bank account under the name Royster Basketball School. It is unclear, however, from the canceled checks provided by petitioner, whether the account was used entirely and solely for the purpose of operating RBS. As an example, there are copious checks written to "cash", as well as for bank card and cell phone accounts. Most of the memorandum lines on these checks are blank. Moreover, the record is devoid of any evidence that there were any deposits made to the account during the years in issue. Based on our review of the canceled checks provided, we find that petitioner did not maintain the checking account in question in a businesslike manner.

Although petitioner provided respondent with a document entitled, "Business Plan for RBS" on May 25, 2006, shortly before the trial of this case, we believe that petitioner did not have a business plan prior to or during the years in issue. We base this conclusion on the fact that when specifically asked whether he had then or ever had a business plan for RBS during an informal meeting with respondent in November of 2005, petitioner admitted that he did not then, or ever, have such a plan.

Finally, although petitioner continually asserts that basketball is "a business" and that RBS was his way of participating in the business, petitioner does not profess that he was in the business of operating a profitable basketball school. In fact, petitioner colorfully and frankly testified

that his intention in starting and operating RBS was to gain fame for himself and the players so that he would get a lucrative job offer and that his players would receive college scholarships and offers to join professional teams. Petitioner admitted that although the players were required to pay $300 to participate on the team, he often did not collect this fee from his players. Petitioner cannot point to any evidence that can establish that he intended to derive a profit short of his goal to parlay the success of one of his players into a lucrative talent-scouting job for himself with an athletic apparel conglomerate.

In sum, petitioner has introduced little evidence to show that he operated RBS in a manner similar to other profitable basketball schools. Although petitioner has shown his efforts to advertise and maintain a bank account, we are unconvinced that the bank account at issue was used solely for RBS. Finally, we conclude that petitioner had no intention of operating RBS during the years in issue with the intention of making a profit, as he actually ran the school with highly optimistic and speculative hopes that he would enroll a player in his school who would bring him such fame that a job offer for himself would surely follow.

Finally, when a taxpayer changes operating methods, or abandons unprofitable methods in a manner consistent with an intent to improve profitability, a profit motive may be indicated. Sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner presented no evidence to show either that he changed his methods over the years in issue to improve profitability or that he took steps to reduce costs in order to make a profit. In fact, we note that petitioner testified that he needed to increase the team's exposure through participating in a number of large tournaments taking place in other States. Participating in these tournaments required expensive travel and lodging costs, and petitioner did not present any evidence to show that he attempted to either reduce these expenses or increase the fees required for players in order to improve the school's profitability. Even though petitioner testified that he knew that he would have to offer "scholarships" to certain players in order to increase the chances of having stellar talent on the RBS team, he did not provide any evidence showing that he considered raising fees for other players that could afford the costs. Based on the above, we conclude that this factor weighs in favor of respondent.

Expertise of Petitioner

Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate a profit objective. Engdahl v. Commissioner, supra at 668; sec. 1.183-2(b)(2), Income Tax Regs. Efforts to gain experience and a

willingness to follow expert advice may also indicate a profit objective.  Dworshak v. Commissioner, T.C. Memo. 2004-249.

Petitioner has been involved with basketball since he was a teenager.  Petitioner knows of one person that has been hired by an athletic apparel company after running a youth basketball school.  In addition, one of petitioner's best friends, a former professional basketball player, works as a talent scout for an athletic shoe company and teaches basketball skills.  While petitioner clearly possesses a personal knowledge about the business of basketball, his knowledge does not extend to the economics of running a basketball school.

Petitioner testified that he has neither business experience nor experience in coaching youth basketball.  Petitioner testified that he began his school only after seeing his friend, a former professional basketball player, garner a highly paid position with an athletic shoe company after sponsoring a youth basketball team.

Based on the record, we conclude that although petitioner does have a notable background in basketball--both as a player and as a referee--he was not an expert in running a basketball school, and he did not seek out expert advice regarding the economic realities of running such an endeavor.  The fact that petitioner's inspiration for starting his basketball school was his friend who was a former professional basketball player

illustrates that his personal goal was not a realistic one.  We conclude that had he sought out advice on whether he could realistically start and parlay a profitable youth basketball school in Chicago into a lucrative job offer for himself, he would not have endeavored to make RBS a business.[3]   In sum, our conclusion with respect to this factor weighs in favor of respondent.

Time and Effort Petitioner Expended in Carrying On the Activity

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects.  Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner testified that he spent approximately 2 hours conducting weekly practice from May through July of each of the years in issue, and approximately 5 hours each of those weeks on administrative tasks related to RBS.  In addition, petitioner would spend upwards of 12 hours a day on the days that the RBS team would participate in tournaments.

Petitioner testified that he took pleasure in watching his players and in the reputation he was building as a youth

_____

[3] We note that, in 2004, petitioner applied for, and received, sec. 501(c)(3) status to operate RBS as a charitable entity.

basketball coach. Petitioner was clear that although he wanted to expose his players to talent scouts, his personal goal was to establish and enhance his reputation as a talent scout himself so that he would receive a job offer from an athletic shoe or apparel company. We are convinced that petitioner spent a considerable amount of his personal time on RBS from May through July in each of the years in issue. Nevertheless, because RBS was formed and operated--in great part--for petitioner's personal objectives, we conclude this factor in favor of respondent's position.

Expectation That Assets Used in Activity May Appreciate

The expectation that assets used in the activity will appreciate in value sufficiently to lead to an overall profit when netted against losses may indicate a profit objective. Engdahl v. Commissioner, supra at 668-669. Neither petitioner nor respondent argues that there are any assets involved with RBS, including the value of its reputation, which is significant enough to offset petitioner's losses. Therefore, we view this factor as neutral to our conclusion.

Success of Petitioner in Carrying On Similar Activities

The fact that the taxpayer had engaged in similar activities in the past and converted them to profitable enterprises may indicate that he engaged in the present activity for profit. Lundquist v. Commissioner, T.C. Memo. 1999-83, affd. without

published opinion 211 F.3d 600 (11th Cir. 2000); sec. 1.183-2(b)(5), Income Tax Regs. Although petitioner has a long history of playing basketball and working as a game referee, he had not previously engaged in operating a basketball team. Accordingly, we view this factor as neutral.

History of Income or Losses With Respect to the Activity

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. Losses that extend beyond the customary startup stage may indicate that the activity is not engaged in for profit. Engdahl v. Commissioner, supra at 669; sec. 1.183-2(b)(6), Income Tax Regs.

From 1998 through 2002, petitioner reported Schedule C losses totaling $106,562. Petitioner has never reported a profit for RBS. Petitioner argues that the history of RBS losses prior to and during the taxable years at issue does not indicate that he lacked a profit objective because his activity was in its startup phase.

Petitioner operated RBS for 2 years prior to 2000, the first taxable year at issue. Petitioner reported losses on his Schedules C for 1998 and 1999 of $16,000 and $20,000. Petitioner's losses thereafter either remained steady or increased in all of the years in issue. Petitioner has never reported a profit for RBS. While petitioner is correct in his

presumption that he should generally be afforded a startup period wherein losses are expected, petitioner also testified that he knew when starting his school that he would not be able to cover his operating costs with tuition. Further, he realized his continuing operation of RBS would require that he would have to personally expend a large amount of money as an investment to achieve his potential objective of being offered a high-paying job with an athletic shoe or apparel company. Given the history of RBS losses in this case, combined with petitioner's hopeful dream of a lucrative job, this factor weighs heavily in favor of respondent.

## The Amount of Occasional Profits, If Any

The amount of profits in relation to the amount of losses incurred may provide a useful criterion in evaluating whether the taxpayer engaged in an activity for profit. Sec. 1.183-2(b)(7), Income Tax Regs.

Petitioner has not generated a profit for RBS in any of the years in issue, or in any years prior or subsequent to the years in issue. Accordingly, this factor weighs in favor of respondent.

## Financial Status of Taxpayer

Substantial income from sources other than the activity may indicate that the taxpayer is not engaged in the activity for profit, particularly if the losses generate substantial tax

benefits. Engdahl v. Commissioner, supra at 669-670; sec. 1.183-2(b)(8), Income Tax Regs.

Petitioner works as a computer specialist for the IRS. During the years in issue, petitioner received wage income from his work with the IRS averaging $65,000 annually. In addition, during the years in issue, petitioner reported average income from his work as a high school basketball referee of $3,000.

Petitioner claimed business losses averaging $23,000 per year against his wages and income from refereeing during the years at issue, thus enabling petitioner to receive a considerable after-tax benefit in the form of a refund. We find that petitioner's considerable income from his employment with the IRS, as well as his income from work as a game referee, weighs in favor of respondent.

Elements of Personal Pleasure or Recreation

The elements of personal or recreational motive in conducting an activity may indicate that the taxpayer is not conducting the activity for profit. Sec. 1.183-2(b)(9), Income Tax Regs. The fact, however, that the taxpayer derives personal pleasure from engaging in the activity does not show that the taxpayer lacks a profit objective if the activity is, in fact, conducted for profit as evidenced by other factors. Id.

The record in this case is replete with statements that petitioner not only gained great pleasure in the reputation that

he was building in RBS, but that he hoped to parlay his reputation as the director/coach of a basketball skills school into a "six-figure salary with Nike or Adidas."  This goal, however, by itself, does not negate the presence of any profit objective.  We do conclude, however, that petitioner's statements to this effect illustrate that his intention to make a profit was not one for RBS, per se, but for himself in the form of a lucrative contract with a shoe company to work as their talent scout.  While we recognize that petitioner did derive some personal pleasure in operating RBS, this factor, by itself, does not negate a lack of profit objective.  Accordingly, we view this factor as neutral.

In summary, petitioner repeatedly testified that he did not intend to derive a profit from RBS, per se, but had high hopes that the success of his school would parlay into a personal opportunity for himself to work for a major athletic shoe or apparel company.  With startling candor, petitioner testified that he did not take steps to make RBS profitable, as many of his students could not afford the $300 enrollment fee.  While we are sympathetic to the accommodations petitioner made to the young players who played for RBS, we cannot look askance at petitioner's admissions and the lack of any business plans or budget projection aimed at making RBS into a profitable enterprise.  Moreover, RBS never made a profit, and the record is

devoid of any evidence that petitioner took steps to operate RBS in a businesslike manner.

For the foregoing reasons, we find that petitioner's basketball school activity was not engaged in for profit within the meaning of section 183.  Therefore, respondent's determination that petitioner may not deduct losses from that activity is sustained.[4]

Deductibility of Expenses

Since we have sustained respondent's determination that petitioner did not engage in his basketball school activity for profit within the meaning of section 183, we now turn our analysis as to what deductions, if any, petitioner may be permitted to take in accordance with section 183(b)(1) and (2).  Section 183(b)(1) allows deductions which are otherwise allowable without regard to whether the activity is engaged in for profit; e.g., State and local taxes and interest.  Section 183(b)(2) allows deductions that would be allowable if the activity were

---

[4] Irrespective of our decision to sustain respondent's determination with respect to petitioner's basketball school activity, we disagree with respondent's recharacterization of the income as listed on petitioner's Schedules C for RBS for each of the taxable years in issue on the grounds that the income was received from petitioner's employer as reimbursement for employee business expenses.  Upon our review of the record, including the Forms W-2, Wage and Tax Statement, from petitioner's employer for the years in issue, we fail to find that petitioner received any income as reimbursement for business expenses.  Accordingly, a decision to be entered under Rule 155 will reflect the foregoing.

engaged in for profit, but only to the extent of gross income received from the activity.

In the notice of deficiency, respondent, in part, disallowed petitioner's claimed business expense deductions for RBS on the grounds that he had failed to adequately substantiate the claimed deductions, despite repeated requests made to petitioner for such records. Petitioner asks the Court to excuse his inability to fully produce his records with respect to his basketball school activity on the grounds that most of these records were stolen in a burglary of his apartment. Petitioner requested at trial that the Court allow deductions for his basketball school-related expenses on the basis of his testimony and the records that he was able to produce at trial under the rule in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

Section 274(d) supersedes the rule in Cohan, and requires strict substantiation of expenses for travel, meals and entertainment, and with respect to any passenger automobile, computer, cellular phone, and property generally used for entertainment. A taxpayer is required, under section 274(d), to substantiate these types of expenses by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense.

Petitioner argues that he should be allowed to deduct certain expenses to which section 274(d) applies because the records he produced at trial satisfy the substantiation requirements of section 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985), which allow a taxpayer to reconstruct reasonably his business expenses when original documents are lost or destroyed through no fault of the taxpayer.

Respondent argues that petitioner failed to present credible evidence to substantiate that he incurred business expenses and that petitioner has not provided the Court with a sufficient basis on which to make a Cohan estimation. Respondent also argues that petitioner has not met the heightened substantiation requirements imposed by section 274(d) for those deductions to which section 274(d) applies.

At trial, petitioner produced the following: photocopies of checks drafted on the RBS account for 2000, 2001, and 2002; a copy of a rental receipt for Western Springs Rec Center for 2001; an itemized hotel receipt dated May 28, 2000, in the amount of $1,654.86; itemized hotel receipts dated July 31, 2002, in the aggregate amount of $2,215.18; an itemized American Express bill; and, an itemized cellular phone bill.

Upon review of the canceled checks provided by petitioner, it is impossible to determine whether the checks were written for petitioner's personal expenses. We find petitioner's testimony

credible, however, that the checks written to the AAU and the Western Springs Rec Center were for RBS-related expenses incurred with basketball school sessions and tournament entry fees that occurred contemporaneous to their payment. Specifically, and for purposes of our decision, the record includes checks drafted to the AAU and the Western Springs Rec Center in the following amounts:

|  | 2000 | 2001 | 2002 |
|---|---|---|---|
| Checks drafted to: | | | |
| AAU | $642 | $2,664 | $400 |
| Western Springs Rec Center | 521 | 380 | 200 |
| Total | 1,163 | 3,044 | 600 |

As to the remainder of the canceled checks, we find petitioner's testimony and the receipt provided for Western Springs Rec Center credible to substantiate only the foregoing expenses.

The hotel receipts provided correspond to petitioner's credible testimony regarding tournaments that RBS entered in 2000, and therefore, we hold that petitioner has satisfied the heightened substantiation requirements under section 274(d) with respect only to these expenses--$3,870.04 for taxable year 2000.

As to the remaining items, the American Express statement, and an itemized cellular phone bill, neither the credit card statement nor the phone bill rises to the substantiation standard required. The American Express statement is for an account held

jointly by petitioner and his ex-wife, and petitioner offers no explanation for the charges listed.  The cellular phone bill is a statement of accounts for some months in 2001 and 2002, and it is for petitioner's business phone.  The account lists petitioner's employer, the IRS, as the account holder.  Petitioner offered no evidence either that he was personally accountable for paying this bill or that any of the charges made on the account were related to RBS.

Based on the foregoing, we hold that petitioner is entitled to deduct expenses in accordance with section 183(b)(2) of the following: $3,000 for 2000;[5] $3,044 for 2001; and $600 for 2002.

Accuracy-Related Penalty Under Section 6662

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a) for each of the taxable years in issue.  Section 6662 imposes a penalty in the amount of 20 percent of the portion of the underpayment to which the section applies.  As relevant to this case, the penalty applies to any portion of the underpayment that is attributable to any substantial understatement of income tax.  Sec. 6662(b)(2).  There is a "substantial understatement of income tax" if the amount of the understatement exceeds the greater of

_____

[5] Sec. 183(b)(2) limits the amount that may be deducted to gross income of the activity.

10 percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1).

Section 7491(c) requires the Commissioner to carry the burden of production with regard to penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the burden of production is met, the taxpayer must come forward with sufficient evidence that the penalty does not apply. Id. at 447. Respondent has satisfied his burden by showing that petitioner's understatements of tax, which exceeded $5,000, were substantial.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment if the taxpayer can establish that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge and education of the taxpayer." Id.

Although petitioner did not raise the issue of reasonable cause or good faith in the petition, per se, he did raise as an issue that his belief that he was entitled to deduct expenses for

RBS was later justified by a statement made to him by an IRS Appeals Officer who agreed that RBS was, in fact, a business.

Reliance upon the advice of an expert tax preparer may demonstrate that a taxpayer acted with reasonable cause and good faith in the context of section 6662(a).  Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); see sec. 1.6664-4(c)(1), Income Tax Regs.  Petitioner, however, did not seek the advice of any such expert prior to the filing of the returns for the years in issue, despite the fact that he was employed during these years by the IRS.  Petitioner did not testify that he honestly believed that he could claim the expenses related to RBS in the years at issue.  Moreover, petitioner failed to produce any books, records, or other work papers in response to respondent's six requests for information.  Based on these facts, we conclude that petitioner did not act with reasonable cause and in good faith.  Accordingly, we hold that petitioner is liable for the accuracy-related penalties under section 6662(a).

In reaching our holdings, we have considered all arguments and contentions made by the parties, and to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

A decision will be entered

under Rule 155.[6]

---

[6] We note, however, if our decision results in an increase in the amount of petitioner's deficiency or accuracy-related penalty for any year at issue, since respondent did not ask for an increased deficiency in his pleadings, he is limited to the amounts set forth in the notice of deficiency.